[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13384

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TONY EMMITT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:07-cr-00265-LSC-GMB-1

_____

Before JORDAN, NEWSOM and HULL, Circuit Judges.

PER CURIAM:

Tony Emmitt appeals his sentence of 60 months' imprisonment, imposed upon revocation of his supervised release term, pursuant to 18 U.S.C. § 3583(e), (g). On appeal, Emmitt argues that his revocation sentence is substantively unreasonable. After review, we affirm Emmitt's sentence.

## I.  BACKGROUND

### A.  Conviction and Supervised Release

In 2007, Emmitt pled guilty to two crimes: (1) possession with intent to distribute five grams or more of cocaine base ("crack cocaine"), in violation of 21 U.S.C § 841(a) and (b)(1)(B), and (2) possession of a firearm during a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Emmitt served consecutive 60-month sentences, to be followed by one term of 48 months of supervised release.

On January 8, 2016, Emmitt began serving his 48-month supervised release term. As conditions of his supervised release, Emmitt was prohibited from: committing another federal, state, or local crime; possessing a firearm; and associating with persons engaged in criminal activity, among other conditions.

### B.    Two Arrests in 2019

On September 28, 2019, Emmitt was arrested by Birmingham police and charged with possession of a firearm by an

unauthorized person. Based on this state charge, Emmitt's federal probation officer petitioned for revocation of his supervised release because Emmitt had violated the supervised release conditions not to commit another crime and not to possess a firearm.

About two months later, on November 20, 2019, Emmitt was again arrested and was charged under Alabama law with drug trafficking, possession of drug paraphernalia, and carrying a concealed pistol without a permit. In December 2019, the probation officer amended the petition to add violations based on circumstances on the date of his arrest and these new state charges. Specifically, the addendum charged Emmitt with violating conditions prohibiting him from committing another crime, illegally possessing a controlled substance, possessing a firearm, and associating with persons engaged in criminal activity.

## C. Revocation of Supervised Release

At the revocation hearing, Emmitt admitted the violations charged in the petition, and the district court revoked Emmitt's supervised release. The district court discussed with Emmitt the fact that he faced new firearm and drug-trafficking charges, that those charges were "a separate matter," and that any agreement he may have with the government about those charges did not bind the district court in the revocation proceedings.

Emmitt indicated that he understood. He later stated that he was trying to come to an agreement with the government as to

the new charges but "wanted to go ahead and get the revocation done."

The district court found that Emmitt had a Grade A violation and a criminal history category of IV, which resulted in an advisory revocation range of 37 to 46 months. *See* U.S.S.G. § 7B1.4(a). Because Emmitt was on supervised release for Class A felonies, the statutory maximum sentence upon revocation was five years. *See* 18 U.S.C. § 3583(e)(3). The parties did not dispute the advisory guidelines calculations.

The probation officer recommended a 46-month sentence. The government declined to make a sentencing recommendation, deferring to the probation officer.

Emmitt asked the district court to sentence him to only the ten months he had already served (since arrest), to order him to undergo drug treatment, and to extend his supervised release term. Emmitt stressed that while he was originally incarcerated, he had completed the RDAP program, obtained his GED, and had taken some college courses. After his release, he continued taking college courses, obtained a license to be a heating and HVAC technician, and started his own company. Emmitt admitted he had a drug addiction. But if he was released, Emmitt had a full time job under another person's supervision and a bed at a residential drug treatment facility waiting for him. Emmitt spoke on his own behalf and apologized to the court.

The district court imposed the statutory maximum 60-month sentence. In determining that a sentence within the advisory guidelines range was inappropriate, the district court pointed out that Emmitt had possessed a gun twice and went back to the business of dealing drugs after leaving prison, even though he was also doing air conditioning work. The district court noted that Emmitt had 28.3 grams of crack cocaine, 6.4 grams of heroin and a firearm, even though he had previously received a consecutive 60-month sentence for a prior § 924(c) firearm offense. The district court stated, "There is no way that the sentence is anywhere except the maximum in this particular case, which is 60 months."

After the district court pronounced the 60-month sentence, counsel for both parties agreed that (1) the toxicology report on the drugs seized in the November 2019 arrest showed there was no crack cocaine, (2) that Emmitt had possessed only heroin and a firearm at that time, and (3) that Emmitt's resulting state charge was for trafficking heroin. The district court acknowledged the correction and reaffirmed that a 60-month sentence was appropriate, stating as follows:

> I think the dealing drugs and having a gun on two different occasions is more than sufficient to give him the 60 months in prison. I think that's a reasonable sentence when I consider everything, including his conduct and the need to protect the public from his criminal activity, and to provide just punishment.

The district court suggested that the judge presiding over any new charges should consider the revocation sentence, although the district court noted it should not "be a straight offset."

## II.  DISCUSSION

### A.  General Principles Governing Revocation Sentences

Ordinarily, if a defendant violated a condition of supervised release, the district court has discretion to revoke the term of supervision and impose a prison term after considering certain factors set forth in 18 U.S.C. § 3553(a).[1]  18 U.S.C. § 3583(e)(3).  However, if, as here, the defendant possessed a controlled substance or a firearm in violation of the conditions of his release, the district court *must* revoke supervised release and require the defendant to serve a term of imprisonment within certain statutory limits.  *See* 18 U.S.C. § 3583(g).  The district court has discretion as to the length of the prison term, provided it does not exceed the maximum term of imprisonment allowed under § 3583(e)(3)'s

---

[1] The relevant § 3553(a) sentencing factors the courts consider are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to afford adequate deterrence; (3) the need to protect the public; (4) the need to provide the defendant with educational and vocational training or medical care; (5) the Sentencing Guidelines range and pertinent policy statements of the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims.  *See* 18 U.S.C. § 3583(e) (cross-referencing § 3553(a)(1), (a)(2)(B) through (D), and (a)(4) through (7)).

20-13384                Opinion of the Court                7

tiered maximum penalties, based on the class of felony or misdemeanor involved. *See id.* § 3583(e)(3), (g).

When revocation is mandatory under § 3583(g), the statute does not require the district court to consider the § 3553(a) factors. *United States v. Brown*, 224 F.3d 1237, 1241 (11th Cir. 2000), *abrogated in part on other grounds by Tapia v. United States*, 564 U.S. 319, 332, 131 S. Ct. 2382, 2391 (2011). It is sufficient if the district court "set[s] forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007). To the extent the district court considers the § 3553(a) factors, the weight given to any specific factor is committed to the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors. *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014). Moreover, the district court can give great weight to one factor over others. *Id.*

If the district court decides to impose an upward variance, "it must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 50, 128 S. Ct. 586, 597 (2007)). A district court is "free to consider any information relevant to [a defendant's] background, character, and conduct in imposing an upward variance." *United States v. Tome*, 611 F.3d 1371, 1379 (11th Cir. 2010) (quotation marks omitted).

This Court generally reviews the sentence imposed upon revocation of supervised release for reasonableness, applying the deferential abuse-of-discretion standard. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014). The reasonableness of a sentence is determined by considering the totality of the circumstances. *Tome*, 611 F.3d at 1378. The party who challenges the sentence bears the burden to show that the sentence is unreasonable. *United States v. Trailer*, 827 F.3d 933, 936 (11th Cir. 2016). Under the abuse-of-discretion standard, we will affirm any sentence that falls within the range of reasonable sentences, even if we would have decided that a different sentence was more appropriate. *United States v. Irey*, 612 F.3d 1160, 1190-91 (11th Cir. 2010) (*en banc*).

## B.  Emmitt's Revocation Sentence

Here, Emmitt's revocation sentence of 60 months' imprisonment is substantively reasonable. The district court's justification—that the public needed to be protected from Emmitt, who had returned to the very criminal activity of drug trafficking and firearm possession for which he had just completed a 120-month total sentence—was sufficiently compelling to warrant an upward variance of 14 months (from 46 months to 60 months). Even though the district court was not required to consider the § 3553(a) factors, it did consider some of those factors and did not abuse its discretion in weighing them.

Emmitt contends the district court failed to properly consider his history and characteristics, his need for drug

treatment, and the likelihood that he would face new federal charges and instead focused too heavily on the similarity between his present violations and his underlying offense conduct. The district court was within its discretion to give more weight to Emmitt's aggravating factors and less weight to his mitigating factors. *See Cubero*, 754 F.3d at 892. Moreover, the district court's consideration of the nature of Emmitt's original offenses of conviction in comparison to his revocation conduct was appropriate because both involved controlled substances and firearms. *See, e.g., Tome*, 611 F.3d at 1379 (affirming as substantively reasonable a 14-month upward variance where the defendant's supervised release violations involved conduct related to his underlying conviction). The similarity between Emmitt's prior crimes and current violations related to several § 3553(a) factors, including Emmitt's history and characteristics, the need to deter criminal conduct, and the need to protect the public from further crimes.

Notwithstanding Emmitt's argument to the contrary, the district court discussed on the record the possibility that Emmitt would face additional federal charges as a result of his violation conduct. Indeed, during the revocation hearing, Emmitt confirmed his understanding that he could face new charges and stated that he was in negotiations with the government but nevertheless wanted to proceed with the revocation. And the district court clarified that it was considering only Emmitt's

violation conduct, not any new charges, in imposing the revocation sentence.

Emmitt's revocation sentence is for his breach of trust and violation of his supervised release conditions in possessing the firearms and trafficking drugs. It is not punishment for the new crimes he has committed. *See* U.S.S.G. § 7, Pt. A, cmt. n.3(b) (directing the district court to "sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator"). That there is the possibility, or even a likelihood, that additional charges could be brought against him for the same conduct does not make his revocation sentence unreasonable.

In sum, in light of all the circumstances, Emmitt has not shown that the district court's decision to impose a 60-month sentence was an abuse of discretion.

**AFFIRMED.**